[No. E018130. Fourth Dist., Div. Two. Dec. 9, 1997.]

EION McDOWELL et al., Plaintiffs and Respondents, v.
WILLIAM WATSON, Defendant and Appellant.

COUNSEL

McNamara, Van Blarcom, McClendon & Leibold, Stephen M. McNamara and John G. McClendon for Defendant and Appellant.

James DeAguilera for Plaintiffs and Respondents.

OPINION

McKINSTER, Acting P. J.—Challenging various approvals given by the County of Riverside to a development on land owned by William Watson, Eion and Clara McDowell unsuccessfully petitioned the trial court for a writ of mandate and injunction. After the trial court denied the McDowells' petition,[1] Watson moved for attorney's fees pursuant to Code of Civil Procedure section 1021.1 and for sanctions pursuant to Public Resources Code section 21167.8. The trial court denied both motions. Watson appeals. Finding no abuse of discretion, we affirm.

ISSUES ON APPEAL

Regarding the denial of the motion for attorney's fees pursuant to Code of Civil Procedure section 1021.1, was the gravamen of the cause of action asserted by the McDowells one for injunctive relief?

Regarding the denial of the motion for sanctions pursuant to Public Resources Code section 21167.8, were the McDowells required by statute to personally attend the settlement meeting? If they were not, did the trial court abuse its discretion in denying the motion as to their counsel?

DISCUSSION

A. *The Motion for Attorney's Fees Pursuant to Code of Civil Procedure Section 1021.1 Was Properly Denied.*

The McDowells' original petition was filed in September of 1994. On January 26, 1995, Watson served an offer, "pursuant to Code of Civil Procedure §§ 998 and 1021.1, to compromise and settle the above matter in exchange for petitioners dismissing the matter with prejudice. Each party to this compromise is to bear its own costs and attorney's fees." The McDowells did not accept that offer.

---

[1]That denial was affirmed by a divided panel of this court in *McDowell* v. *County of Riverside* (Apr. 22, 1997) E016962 (nonpub. opn.). As requested by both sides, we take judicial notice of the record in that action.

The judgment entered in favor of the county and Watson after the trial court denied the McDowells' petition entitled Watson to recover his costs of suit from the McDowells. (Code Civ. Proc., § 1032, subd. (b).) Since Watson had previously offered to waive costs, the judgment was less favorable to the McDowells than the offer to compromise had been.

A trial court may, in its discretion, award reasonable compensation for attorney's fees incurred after the date of an offer to compromise if that offer is made pursuant to Code of Civil Procedure section 998, the offeree has failed to accept it, and the offeree thereafter fails to obtain a more favorable judgment. (Code Civ. Proc., § 1021.1, subd. (b).) Those prerequisites having been met, Watson moved for an award of attorney's fees in November of 1995. The trial court denied the motion.

1. *Compensation May Not Be Awarded Under Code of Civil Procedure Section 1021.1 for Attorney's Fees Incurred to Litigate Any Count in Which the Relief Sought Is Essentially Injunctive in Nature.*

■ Subdivision (f) of Code of Civil Procedure section 1021.1 limits the trial court's authority to award attorney's fees by providing in relevant part: "No attorney's fees shall be awarded pursuant to this section in any of the following instances: [¶] . . . [¶] (5) For or against any party as to any cause of action the gravamen of which is personal injury, wrongful death, or injunctive relief." The McDowells contend that the gravamen of their suit was for injunctive relief, and thus the motion was properly denied.

The statutory reference to a "cause of action the gravamen of which is . . . injunctive relief" is ambiguous. Strictly speaking "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) The gravamen, or essential nature (see *Williamson* v. *Pacific Greyhound Lines* (1944) 67 Cal.App.2d 250, 252-253 [153 P.2d 990]), of a cause of action is determined by the primary right alleged to have been violated, not by the remedy sought (*R & A Vending Services, Inc.* v. *City of Los Angeles* (1985) 172 Cal.App.3d 1188, 1194 [218 Cal.Rptr. 667]). The nature of the relief sought does not determine the nature of the cause of action because the violation of one primary right may entitle the injured party to many different forms of relief. (*Crowley*, at p. 682; 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 30, p. 92.) "Injunctive relief is a remedy and not, in itself, a cause of action . . . ." (*Shell Oil Co.* v. *Richter* (1942) 52 Cal.App.2d 164, 168 [125 P.2d 930].)

Nevertheless, the phrase "cause of action" is also "commonly used in pleading as applying only to the relief sought, even though the separately pleaded claims have origin in the same right or obligation." (*Ideal Hardware etc. Co.* v. *Dept. of Emp.* (1952) 114 Cal.App.2d 443, 448 [250 P.2d 353]; accord, *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal.Rptr. 225, 543 P.2d 593].)

Were the Legislature to have intended "cause of action" to be understood in its technical sense, subdivision (f)(5) of Code of Civil Procedure section 1021.1 would be meaningless, because injunctive relief is never the gravamen of a cause of action. In this instance, therefore, "cause of action" must have been used in the latter, more common, sense. Accordingly, we interpret Code of Civil Procedure section 1021.1, subdivision (f)(5), to prohibit an award of attorney's fees incurred to litigate any count in which the relief sought is essentially injunctive in nature.[2]

### 2. The Relief Sought by the McDowells Was Essentially Injunctive.

What, then, is the nature of injunctive relief? An injunction is statutorily defined to be "a writ or order requiring a person to refrain from a particular act." (Code Civ. Proc., § 525.) While the statute seems to limit that definition to prohibitory injunctions, an injunction may also be mandatory, i.e., may compel the performance of an affirmative act. (*Smith* v. *Smith* (1941) 18 Cal.2d 462, 465 [116 P.2d 3]; *Luitwieler* v. *Superior Court* (1921) 54 Cal.App. 528, 530 [202 P. 165].) In short, an injunction may be more completely defined as a writ or order commanding a person either to perform or to refrain from performing a particular act. (E.g., *Comfort* v. *Comfort* (1941) 17 Cal.2d 736, 741 [112 P.2d 259] [" 'to do or desist from certain action' "].)

When Watson made his offer to compromise, the operative pleading was entitled the "Second Amended Petition for Writ of Mandate." Other than attorney's fees and costs, the only relief for which the McDowells prayed in that pleading was (1) a writ of mandate directing the county to comply with the California Environmental Quality Act (CEQA) by preparing an environmental impact report on what they characterized as Watson's "new" project, and (2) preliminary and permanent injunctions restraining the county from taking any actions to implement or to permit the implementation of Watson's project until the county had complied with CEQA.

---

[2]Watson's argument that the gravamen of a CEQA cause of action is not injunctive relief, while accurate, is beside the point. The Legislature defined the scope of subdivision (f)(5)'s exception according to the gravamen of the relief sought, not the gravamen of the underlying cause of action.

Thereafter, the pleadings were amended one last time by the filing of the "Third Amended Petition for Writ of Mandate and Complaint for Injunctive Relief." Like the prior version, it seeks: a writ of mandate directing the county to vacate the agricultural grading permit previously issued to Watson, to vacate the approval of the subdivision, and to prepare an environmental impact report (EIR); and preliminary and permanent injunctions restraining the implementation of the subdivision pending compliance with CEQA.

In short, the McDowells sought relief consisting of orders commanding the county to perform certain acts and to refrain from performing certain other acts. It is therefore injunctive in nature, regardless of whether that relief were to come in the form of an order entitled "writ of mandate" or "permanent injunction." All of the relief sought being essentially injunctive, it falls within the exception created by subdivision (f)(5) of Code of Civil Procedure section 1021.1. Therefore, the trial court did not err by refusing Watson's request for an award of attorney's fees under that section.

Watson contends that the legislative history of Code of Civil Procedure section 1021.1 indicates that the reference to injunctive relief in subdivision (f)(5) was intended to exclude actions seeking relief in the form of writs of mandate. ■ ■ After taking judicial notice of and reviewing the relevant evidence of legislative intent,[3] we find no such indication. To the contrary, there is nothing to suggest that the Legislature intended to draw a distinction between cases in which the relief sought is expressly identified as an injunction and those in which the relief, although essentially injunctive, is referred to by a different label.

---

[3]In addition to seeking legislative history materials from the State Archives, we suggested to the parties that they submit any such materials which were relevant to our inquiry and request that we take judicial notice of them. Both sides did so, regarding the Legislature's intent in enacting both Code of Civil Procedure section 1021.1 and Public Resources Code section 21167.8. To the extent that those requests pertain to records of legislative testimony, analysis, argument, or action, they are granted.

Watson also asks that we take judicial notice of letters to particular legislators by various supporters and critics of the legislation, bill analyses prepared by executive departments, enrolled bill reports to the Governor, and letters from the bills' authors or sponsors to the Governor. To that extent, his request is denied.

When construing a statute, our task is to ascertain the intent of the Legislature as a whole. (*Quintano* v. *Mercury Casualty* Co. (1995) 11 Cal.4th 1049, 1062 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) Generally, the motive or understanding of an individual legislator is not properly received as evidence of that collective intent, even if that legislator was the author of the bill in question. (*Ibid.*) Unless an individual legislator's opinions regarding the purpose or meaning of the legislation were expressed in testimony or argument to either a house of the Legislature or one of its committees, there is no assurance that the rest of the Legislature even knew of, much less shared, those views. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856].) Moreover, if a legislator's views were never expressed in a legislative forum, those legislators or other

Watson also argues that, by acknowledging that the relief provided by a writ of mandate is injunctive in nature, we threaten to erase all procedural distinctions between mandate and injunctions. We do nothing of the kind. While there are procedural differences between the two forms of relief (see 6 Witkin, Cal. Procedure, *supra*, Provisional Remedies, § 279, pp. 221-222), we are concerned here with the substantive nature, the gravamen, of the relief itself. Recognizing that they are substantively the same in purpose and effect does not eliminate the procedural differences attending to them.

Arguing that the McDowells' requests for injunctive relief were without merit and made in bad faith, Watson also asks us to limit the scope of the

interested parties with differing opinions as to the bill's meaning and scope had no opportunity to present their views in rebuttal. (*Id.*, at p. 701.)

If the views of particular legislators are not admissible for this purpose, then letters written to those legislators in the attempt to influence those views must also be disregarded. (*Quintano* v. *Mercury Casualty Co., supra*, 11 Cal.4th at p. 1062, fn. 5.)

For similar reasons, the analyses or opinions of particular offices within the *executive* branch should not be considered in determining the intent of the *legislative* branch. Legislative staff analyses are considered only because ". . . it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) By contrast, it is not reasonable to infer that enrolled bill reports prepared by the executive branch for the Governor were ever read by the Legislature.

We recognize that courts have sometimes cited the latter materials as indicia of legislative intent. (E.g., *Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 295 [285 Cal.Rptr. 86, 814 P.2d 1328]; *People* v. *Edwards* (1991) 235 Cal.App.3d 1700, 1707, fn. 4 [1 Cal.Rptr.2d 631]; *Transamerica Occidental Life Ins. Co.* v. *State Bd. of Equalization* (1991) 232 Cal.App.3d 1048, 1058, fn. 2 [284 Cal.Rptr. 9]; *City of Poway* v. *City of San Diego* (1991) 229 Cal.App.3d 847, 866 [280 Cal.Rptr. 368]; *Kishida* v. *State of California* (1991) 229 Cal.App.3d 329, 335 [280 Cal.Rptr. 62]; *People* v. *Tabb* (1991) 228 Cal.App.3d 1300, 1310 [279 Cal.Rptr. 480]; *Van de Kamp* v. *Gumbiner* (1990) 221 Cal.App.3d 1260, 1278 [270 Cal.Rptr. 907]; *Bell* v. *Superior Court* (1989) 215 Cal.App.3d 1103, 1109, fn. 2 [263 Cal.Rptr. 787]; *Tafoya* v. *Hastings College* (1987) 191 Cal.App.3d 437, 444 [236 Cal.Rptr. 395].) However, none of those opinions address the propriety of doing so. Accordingly, we decline to follow their example. "Such a departure from past rules of statutory construction, we believe, should be effected only after full discussion and exposure of the issue." (*California Teachers Assn.* v. *San Diego Community College Dist., supra*, 28 Cal.3d at p. 701.)

We also note that *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218-219 [185 Cal.Rptr. 270, 649 P.2d 912], has been relied upon as authority for considering enrolled bill reports to determine legislative intent. (*Bank of the Orient* v. *Town of Tiburon* (1990) 220 Cal.App.3d 992, 1002, fn. 11 [269 Cal.Rptr. 690] disapproved on another ground in *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 743, fn. 11 [29 Cal.Rptr.2d 804, 872 P.2d 143]; accord, *Jacobs, Malcolm & Burtt* v. *Voss* (1995) 33 Cal.App.4th 1399, 1406 [39 Cal.Rptr.2d 774].) However, that reliance is misplaced, because the Supreme Court in *Commodore* specifically noted that it had been requested to take notice of those reports and that the opposing party had not objected. (32 Cal.3d p. 218, fn. 9.) Moreover, while *Commodore* cites authority for taking judicial notice of such executive acts, it does not address the relevance of that evidence to determining legislative intent.

exception created by Code of Civil Procedure section 1021.1, subdivision (f)(5), by imposing the new requirement that, to qualify for that exception, a request for injunctive relief must be "reasonable." We decline to follow Watson's suggestion, for two reasons. First, there is nothing in the statute to support the limitation which he advocates. Moreover, there is no need to create such a limitation, because a remedy already exists for frivolous actions or tactics brought in bad faith: Code of Civil Procedure section 128.5. Watson's motion for sanctions under section 128.5, directed in part to the ex parte requests for injunctive relief which he cites in support of his current argument, was denied. Watson is bound by his concession that the trial court did not abuse its discretion by doing so.

### B. *The Trial Court Did Not Abuse Its Discretion by Denying Watson's Motion for Sanctions Under Public Resources Code Section 21167.8.*

Public Resources Code section 21167.8 provides that, shortly after being served with the petition or complaint in a CEQA action, the public agency must give notice of a settlement meeting, at which the parties are to attempt to settle the litigation. (*Id.*, subds. (a) & (b).) The trial court may sanction any party who fails to participate. (*Id.*, subd. (e).)

The county gave notice of a settlement meeting to be held on November 10, 1994. Counsel for the McDowells, the county, and Watson attended. Watson himself also attended. The McDowells did not personally attend the meeting. Neither did any member of the county's board of supervisors or any other representative of the county.

### 1. *The Trial Court Correctly Interpreted Public Resources Code Section 21167.8.*

In its motion for sanctions under Public Resources Code section 21167.8, subdivision (e), Watson argued that the McDowells failed to participate in the settlement meeting because they did not attend the meeting in person. Finding no authority for the proposition that personal attendance by the litigants is required, the trial court denied the motion.

On appeal, Watson again argues that Public Resources Code section 21167.8 requires the actual attendance of the litigants, not just their counsel. Noting that California Rules of Court, rule 222(c), expressly requires both the litigants and their trial counsel to "personally attend" mandatory settlement conferences held in civil actions generally, he reasons that the litigants should also be required to personally attend CEQA settlement meetings, because "it is the party's participation that makes the CEQA settlement procedure meaningful."

■ However, our task in interpreting a statute is not to exercise our subjective judgment of what the statute ought to mean but to determine what the Legislature intended it to mean. (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1071, fn. 20 [275 Cal.Rptr. 594].) Because "[t]he Legislature's intent is best deciphered by giving words their plain meanings" (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 376 [20 Cal.Rptr.2d 330, 853 P.2d 496]), our first step is to attempt " ' "to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them' . . ." ' " (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473], citations omitted).

In the countless procedural statutes in which the term "party" is used, it is commonly understood to refer to either the actual litigant or the litigant's attorney of record. (*Levy* v. *Superior Court* (1995) 10 Cal.4th 578, 583 [41 Cal.Rptr.2d 878, 896 P.2d 171]; *Diaz* v. *May* (1993) 15 Cal.App.4th 1268, 1272 [19 Cal.Rptr.2d 409].) Since that is the ordinary import of the term, that is the meaning we must ascribe to it when used in Public Resources Code section 21167.8, unless the Legislature has clearly indicated a contrary intent in this instance.

No such contrary meaning is indicated by the language of Public Resources Code section 21167.8 itself. For instance, that section uses "party" in its usual sense when it provides that the trial court shall schedule a judicial settlement conference upon the request of any party (*id.*, subd. (d)), and when it refers to the statements of issues being served "on all other parties" (*id.*, subd. (f)). And while the last two sentences of subdivision (a) draw distinctions between the litigants and their counsel, they appear to do so in order to ensure that notice of the settlement meeting is served on counsel for the litigants rather than the litigants themselves, even though the attorneys may not have formally appeared in the case at that early date.

The original language of Public Resources Code section 21167.8 strongly suggested that the litigants were expected to appear at the settlement conference only through their respective counsel. After describing the contents of a presettlement conference statement that was to be served on the parties by the plaintiff or petitioner, former subdivision (b)(2) of the section provided: "Counsel shall confer with their clients in advance regarding settlement and shall be prepared to negotiate a settlement whenever reasonably possible." (Stats. 1984, ch. 1514, § 13, p. 5344.) While that language was deleted in 1994 when the requirement of the presettlement statement was repealed (Stats. 1994, ch. 1294, § 23), there is no indication that the

meaning of the surviving references to "party" and "parties" was intended to change.[4]

Occasionally, our procedural statutes and rules employ the word "party" in a narrower sense, to mean the specific person or entity by or against whom legal proceedings are brought. (*Levy* v. *Superior Court, supra*, 10 Cal.4th at p. 583.) But the statutes and rules which do so usually draw an express distinction between the litigants and their counsel. For instance, Code of Civil Procedure section 2033, subdivision (g), specifies that a party responding to a request for admissions must sign the responses under oath, while the attorney for that party need sign the responses only if they contain an objection. Code of Civil Procedure section 2030, subdivision (g), regarding responses to interrogatories, and section 2031, subdivision (g), regarding responses to requests for production of documents, draw the same distinction. Code of Civil Procedure section 128.5, subdivision (a), authorizes the imposition of sanctions against either a party or the party's attorney. Similarly, California Rules of Court, rule 222(c), expressly requires both the parties and their trial counsel to personally attend mandatory settlement conferences.

In at least one case, a court determined that a reference to "parties" was intended to mean the litigants themselves, even though the statutory language drew no such distinction. Code of Civil Procedure section 664.6 provides that, "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement." The Supreme Court held that, as used in section 664.6, "parties" must be interpreted to mean the litigants themselves, not including their attorneys of record. (*Levy* v. *Superior Court, supra*, 10 Cal.4th at p. 586.) The court reasoned that while an attorney is authorized to bind the client regarding all procedural matters, the attorney may not impair the client's substantial rights or the cause of action itself. (*Id.*, at p. 584.) "Because the settlement of a lawsuit is a decision to end the litigation, it obviously implicates a substantial right of the litigants themselves." (*Ibid.*) Therefore, when providing in Code of Civil Procedure section 664.6 "for an enforcement mechanism for settlements by 'parties,' the Legislature intended the term to literally mean the litigants personally." (10 Cal.4th at p. 584.)

While an agreement to settle a case on certain terms affects the substantial rights of the litigants, preliminary settlement negotiations which do not

---

[4]Neither side presented us with any legislative history materials regarding the 1994 amendment.

culminate in such agreements do not. Therefore, *Levy*'s reasoning regarding the settlement agreements in Code of Civil Procedure section 664.6 is not transferable to the meetings prescribed by Public Resources Code section 21167.8 to discuss the possibility of settlement. Attorneys can explore those possibilities without their clients' personal presence. Indeed, they frequently do exactly that. (Kosta & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 1997) § 23.75, p. 993.)

■ Because the settlement meeting does not affect the substantial rights of the litigants, and in the absence of statutory language or legislative history[5] indicating that a more restrictive meaning was intended, we conclude that there is no reason to interpret "parties" in any way other than its customary usage in procedural statutes. Therefore, Public Resources Code section 21167.8 does not require the litigants to personally attend the settlement meetings. If they choose not to do so, their counsel shall attend in their stead and shall attempt to settle the litigation.

Accordingly, the trial court did not err in concluding that the McDowells may not be sanctioned under subdivision (e) of Public Resources Code section 21167.8 for failing to personally attend the settlement meeting.

### 2. The Trial Court Did Not Abuse Its Discretion in Denying the Motion for Sanctions on the Basis That the McDowells' Attorney Was Not Prepared to Discuss Settlement.

On appeal, Watson argues that the McDowells failed "to participate in the litigation settlement process" (Pub. Resources Code, § 21167.8, subd. (e)) in a second way as well, because their attorney who attended the meeting was not prepared at that time to discuss settlement. However, the evidence on the factual issue of whether the McDowells' attorney was ready and willing to discuss settlement is conflicting. Moreover, Watson's own evidence indicates that some settlement proposals were in fact discussed at the meeting, regardless of the degree of preparation by the McDowells' counsel. Given the evidence that the McDowells' counsel was prepared and that some degree of settlement negotiations did occur, it cannot be said that the trial court abused its discretion in denying the motion for sanctions.

---

[5]Watson contends that the legislative history shows that "parties" was intended by the Legislature to refer to the actual litigants as opposed to their attorneys. To the extent that the evidence upon which he relies is admissible and relevant for that purpose (see fn. 3, *ante*), it does not support his contention. Nowhere is "parties" used in a way which is inconsistent with its customary meaning.

## DISPOSITION

The postjudgment order is affirmed.

Richli, J., and Ward, J., concurred.