[No. D031171. Fourth Dist., Div. One. May 18, 1999.]

COUNTY OF SANTA BARBARA et al., Plaintiffs and Appellants, v. KATHLEEN CONNELL, as Controller, etc., Defendant and Respondent.

## Counsel

Stephen Shane Stark, County Counsel, and Robert K. Smith, Deputy County Counsel, for Plaintiff and Appellant County of Santa Barbara.

Jed Beebe for Plaintiff and Appellant Superior Court of Santa Barbara County.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Linda A. Cabatic, Assistant Attorney General, Eileen Gray and Peter K. Southworth, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**WORK, J.**—State Controller Kathleen Connell (the Controller) audited the court revenues of the County of Santa Barbara for the period of July 1, 1991, through June 30, 1994, to determine the adequacy of the court revenues it remitted to the state. She determined the County of Santa Barbara was entitled to withhold only $3, rather than the $25 it actually withheld as funding for automation and micrographics, from each civil filing fee collected from September 15, 1992 (the effective date of the Trial Court Trust

Fund legislation) through June 1994. Her audit directed the County of Santa Barbara to remit an additional $277,266 to the state Treasurer. The County of Santa Barbara and the Superior Court of the State of California for the County of Santa Barbara (collectively, the County) filed a complaint for declaratory relief seeking a declaration that no portion of the $277,266 was owed and that its $25 automation fee could continue to be withheld.

The trial court granted summary judgment for the Controller, ruling the statutory scheme permitted the County to withhold no more than $3 from each filing fee. The County appeals, contending its $25 fee has at all times been a valid component of the total filing fee under the statutory scheme, even as amended, and that sound reasons and public policy considerations militate against adopting the Controller's interpretation of Government Code[1] section 68085, subdivision (d). As we shall explain, we conclude the trial court correctly construed the statutory scheme and, accordingly, affirm the judgment.

*Factual and Procedural Background*[2]

On December 14, 1987, the Santa Barbara County Board of Supervisors enacted Santa Barbara County Ordinance No. 3672 (the Ordinance), authorizing the county clerk to charge an additional filing fee of $25 for the first papers filed in civil actions and probate, guardianship or conservatorship matters. The Ordinance was adopted to fund the costs of automating the county clerk's recordkeeping system and for conversion of the document storage system to micrographics. In enacting the Ordinance, the County relied on section 54985, which provided in pertinent part: "Notwithstanding any other provision of law that prescribes an amount or otherwise limits the amount of a fee or charge that may be levied by a county, . . . a county board of supervisors shall have the authority to increase or decrease the fee . . . in the amount reasonably necessary to recover the cost of providing any product or service." The Ordinance expressly declared the fee reflected the amount reasonably necessary to recover the cost of providing automated county clerk and municipal court recordkeeping systems and micrographics document storage and was in addition to and not part of the total fee limited by section 26820.4. At that time, section 26820.6 provided that the automation and micrographics fee could be included in the "total fee," or may be in addition thereto, as determined by the Santa Barbara County Board of Supervisors. The County set the total filing fee at $155. In reliance on receiving revenue as authorized by the Ordinance, the County contracted for an automated case management system with a private company, to be financed by issuance of certificates of participation.

---

[1]All statutory references are to the Government Code, unless otherwise specified.

[2]The factual background is drawn from the parties' joint stipulation of facts.

In 1992, the Legislature enacted and the Governor signed urgency legislation transforming the system for funding the state trial courts. (Stats. 1992, ch. 696 (Assem. Bill No. 1344 (1992 Reg. Sess.)) (hereinafter Assembly Bill 1344).) The effective date of Assembly Bill 1344, which substantially revised the trial court funding system, was September 15, 1992. Assembly Bill 1344 amended section 26820.4 to set the total fee for initial civil filings in superior courts at $182.[3] (Stats. 1992, ch. 696, § 12, p. 3004.) It also amended section 26820.6 to specify that the term "total fee" included "the fee for the automation and conversion of court records imposed pursuant to Section 26863." (Stats. 1992, ch. 696, § 13, p. 3005.) Additionally, it provided that the filing fees collected by the county clerk were to be remitted to the Controller for deposit in the Trial Court Trust Fund, except "that portion . . . collected pursuant to Section 26820.4 . . . which is allocated for . . . automated recordkeeping or conversion to micrographics pursuant to Sections 26863 and 68090.7 . . . ." (Stats. 1992, ch. 696, § 20.4, p. 3008.)

After September 14, 1992, the County imposed a total fee for civil filings of $182, $25 of which continued to be allocated by the County to the automation and micrographics fee, and was not remitted to the state. The Controller conducted an audit to determine the propriety of the court revenues remitted to the state by the County for the period beginning July 1, 1991, and ending June 30, 1994. The audit report concluded the County inappropriately deducted and distributed to the County Automation and Micrographic Fund $25 from each $182 civil filing for the period of September 1992 through June 1994. The Controller determined the County was entitled to withhold only $3 per filing as the maximum automation and micrographics fee. She directed the County to remit $277,266 to the state Treasurer.

The County's complaint contends the Controller's conclusions were incorrect and asked for a writ of mandate directing the Controller to set aside her audit findings. Following cross-motions for summary judgment on the basis of stipulated facts, the trial court granted summary judgment for the Controller. The court found the statutory language to be clear and unambiguous, as section 68085, subdivision (d) permits counties to retain "that portion of a filing fee collected pursuant to Section 26820.4 . . . which is allocated for . . . automated recordkeeping or conversion to micrographics pursuant to Sections 26863 and 68090.7 . . . ." The court further found section 26863 expressly authorized counties to set this fee at a maximum of $3. Thus, the trial court concluded the amount the County was entitled to withhold from each filing fee was no more than $3. The trial court also found the County's

---

[3]The total fee was increased in 1997 to $185. (Stats. 1997, ch. 850, § 6.)

reliance on the Ordinance was unjustified, noting that the Ordinance expressly authorized the county clerk to charge a fee of $25 "in *addition to* the total fee fixed by . . . Section[] 26820.4 . . . ." (Italics added.) Accordingly, the court ruled the County was not entitled to rely on the Ordinance to increase the amount of the withholding allowed under section 68085, subdivision (d).

### *The County Was Authorized to Withhold No More Than $3 Under Section 68085, Subdivision (d) for Automation and Micrographics*

■ Preliminarily, where the statutory language in dispute is clear and unambiguous, there is no need for construction and the judiciary should not indulge in it. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) However, if the statutory language is not so clear, "[i]t is our task to construe, not to amend, the statute." (*Ibid.*) In construing a statute, it is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. In other words, the courts "may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." ■ ■■ (*Ibid.*)[4]

■ In 1983, the Legislature adopted section 54985 to regulate the process of adopting user fees. Section 54985, subdivision (a) authorized the county board of supervisors, notwithstanding any other law which prescribes or limits the amount of a fee or charge which may be levied by a county, to increase or decrease the amount of the fee or charge by the amount reasonably necessary to recover the cost of providing the service. However, in section 54985, subdivision (c), the Legislature excepted certain enumerated fees from this newly conferred authority. That listing did not include the fee to be charged by court clerks under section 26863 "to defray the cost of

---

[4]Where we must construe a statutory provision, we are guided by the firmly established principles governing statutory interpretation: " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' " (*People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310], quoting *People v. Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)

automating the county clerk and municipal and justice court recordkeeping system and conversion of the county clerk and municipal and justice court document storage system to micrographics." Accordingly, supported by the cited authority, the Santa Barbara County Board of Supervisors in 1987 enacted the Ordinance, authorizing an increase in the automation and micrographics fee to $25 and declaring that amount reflected the reasonably necessary cost of automating its recordkeeping system and converting to micrographics document storage.

It appears that the County was the only one in the state to enact an ordinance for the purpose of increasing the automation and micrographics fee. By urgency legislation that took effect on August 29, 1988, section 54985, subdivision (c)(1) was amended to add to the list of exclusions "any other fee or charge that may be assessed, charged, collected, or levied, pursuant to law for filing judicial documents or for other judicial functions." (Stats. 1988, ch. 618, § 1, pp. 2179-2180.) Absent express legislative intent to the contrary, the amendment was not retroactive. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1218 [246 Cal.Rptr. 629, 753 P.2d 585].)

In 1992, the Legislature restructured the system for funding trial courts by enacting Assembly Bill 1344, mandating certain levels of state funding for trial courts and providing for a uniform and increased statewide filing fee to include various local fees. Specifically, Assembly Bill 1344 established the trial court trust fund through the enactment of section 68085, which provides for its funding through filing fees collected by counties from parties in civil actions. (§ 68085, subd. (c).) These fees are to be deposited in a special account and transmitted monthly to the Controller for deposit in the trial court trust fund. (§ 68085, subd. (b).) The fund proceeds are apportioned quarterly by the Controller, upon appropriation by the Legislature, for the purpose of funding trial court operations. (Former § 68085, subd. (a).)[5]

Section 68085, subdivision (d)[6] authorizes counties to retain certain portions of the filing fees collected from litigants and not transmit them to the Controller for deposit in the trial court trust fund. Specifically, former subdivision (d) provides: "This section does not apply to that portion of a filing fee collected pursuant to Sections 26820.4, 26826, 26827, 72055, or 72056 which is allocated for dispute resolution pursuant to Section 470.3 of

---

[5]By adding section 77200, subdivisions (a) and (d), Assembly Bill 1344 codified the legislative intent to increase state funding of trial courts in incremental steps, from 55 percent in the 1992-1993 fiscal year to 70 percent for the 1995-1996 fiscal year, through block grants in 1992-1993 and thereafter in the Budget Act. (Stats. 1992, ch. 696, § 87, pp. 3028-3030.)

[6]All future references to subdivisions (d) and (e) are to section 68085 unless otherwise specified.

the Business and Professions Code, the county law library pursuant to Section 6320 of the Business and Professions Code, the Judges' Retirement Fund pursuant to Section 26822.3, automated recordkeeping or conversion to micrographics pursuant to Sections 26863 and 68090.7, and courthouse financing pursuant to Section 76238." Assembly Bill 1344 also amended section 26820.4, subdivision (a), increasing the total fee for initial civil filings to $182. (Stats. 1992, ch. 696, § 12, p. 3004.) Further, section 26820.6 was amended to specify the term total fee included "the fee for the automation and conversion of court records imposed pursuant to Section 26863 . . . ." (Stats. 1992, ch. 696, § 13, p. 3005.)

Finally, of relevance here, section 26863, subdivision (a) authorizes a county board of supervisors to impose an additional $1 fee for filings in civil actions or proceedings, as specified in section 68090.7, to defray the cost of automating the county clerk and municipal court recordkeeping system and converting the county clerk and municipal court document storage system to micrographics. Section 26863, subdivision (b) further provides a board of supervisors with the discretion to increase this fee—however, not to exceed $3. Section 68090.7 provides a board of supervisors with discretion to impose a fee for the first papers transmitted from any other court in civil actions or proceedings and directs the fees be transmitted to the county treasurer to pay the costs of automating the recordkeeping system or converting the document storage system to micrographics.[7]

The statutory mandate is unmistakable. Subdivision (d) permits counties to retain that portion of a filing fee collected pursuant to section 26820.4, which is allocated for automated recordkeeping and conversion to micrographics pursuant to section 26863. Former section 26820.4 set the total fee for initial civil filings at $182, while section 26820.6 was amended to include the automation and micrographics fee imposed under section 26863 within the term total fee. Section 26863 expressly limits the authority of counties to set the fee at a maximum of $3. Recognizing that the authority to establish a greater fee under the circumstances of section 54985 was removed by amendment in 1988, the trial court correctly concluded the maximum amount the County was entitled to withhold from each filing fee was $3.

---

[7]In 1990, the $1 fee cap was removed from section 68090.7, two years before trial court funding was restructured. (Stats. 1990, ch. 784, § 3, p. 3510.) Consequently, at the time the Legislature considered Assembly Bill 1344, section 68090.7 simply authorized a county to impose an automation fee "as specified in [s]ection[] 26863 . . . ." Assembly Bill 1344 simply amended section 68090.7 to clarify that the automation fee was to be included in the new $182 total fee, rather than in addition to that amount. (Stats. 1992, ch. 696, § 24, p. 3010.) The reference in section 68090.7 to section 26863 incorporates the $3 cap to the automation and micrographics fee.

Relying on *former* subdivisions (d)[8] and (e),[9] the County challenges the above reading of the statutory scheme, asserting the Legislature intended to permit counties throughout the state to retain those fees they had been charging pursuant to section 26863 before enactment of Assembly Bill 1344. Arguing it is critical to note there is no uniformity in the charges made for locally retained fees among California trial courts, the County cites the survival of San Francisco's courthouse construction fee and a range of law library fees.

The Legislature's exception in subdivision (d) of a previously authorized courthouse-financing fee pursuant to section 76238 is not inconsistent with our interpretation of the statutory scheme. Assembly Bill 1344 included this previously authorized courthouse-financing fee within the definition of total fee under section 26820.6, while authorizing its withholding from the trial court trust fund under subdivision (d). Section 76238 has always permitted the City and County of San Francisco, and only that county, to withhold up to $50 for its courthouse construction fee. By reference to that statute, subdivision (d) permits that county to withhold up to $50 for that purpose from the trial court trust fund, just as that subdivision permits the County to withhold up to a $3 automation fee by reference to section 26863. The fact that section 76238 authorizes a courthouse fee only in San Francisco is irrelevant.[10] Rather, the parallel references show a legislative intent to authorize county retention of only specific fees, and those to a designated maximum amount.

As to the withholding of law library fees, the County notes the reference within subdivision (d) is simply to Business and Professions Code section 6320 which does not itself specify a fee. Acknowledging that Business and Professions Code section 6322.1 limits library fees at $20 or less depending upon the size of the county, the County argues the Legislature was necessarily confronted by a wide range of law library fees, ranging from $1 to $20 throughout the state as of 1992. Explaining that presumably each county law library system had developed a budget based on the revenues generated from the dedicated fee and that the amount of such fees and the size of such budgets reflected differing local needs, the County reasons: "If the Legislature eliminated all collection of the fee and simply provided a uniform alternative source of funds it would have a more coherent and logical system. But it would create winners and losers. Some library systems would

---

[8]See *ante*, page 181.

[9]Subdivision (e) formerly provided: "Notwithstanding any other provision of law, no agency shall take action to change the amounts allocated to any of the above funds."

[10]However, it is not irrelevant in the context that had the Legislature intended to exempt the County's $25 automation and micrographics fee, it would have likewise expressly done so.

have unexpected funds while others could be devastated. If on the other hand, it left the existing statutory system in place, counties would have the option to allocate increases of up to $5 a year per filing to their local law libraries. This would divert funds from the Trial Court Trust Fund in unpredictable and potentially significant amounts. [¶] The Legislative solution is found in . . . section 68085[, subdivision ] (e): 'Notwithstanding any other provision of law, no agency shall take action to change the amounts allocated to any of the above funds.' While this is perhaps not the only possible solution, one must express some admiration for the wisdom it represents. Rather than impose a one-size-fits-all solution the choice was made to leave the fees as they stood, decree that they not be changed, and permit them to be retained locally. The new higher levels for filing fees were presumably set to offset any revenue loss from local retention of the special funds." Consequently, the County argues the cited statutory scheme requires the Controller to permit the deduction of any local library fee, and by analogy any automation fee, in effect when the trial court trust fund came into existence.

Preliminarily, in interpreting and harmonizing the subcomponents of subdivision (d), what is abundantly apparent is that parallel construction obtains consistent similar treatment of the expressed fee exemptions. That is, subdivision (d) expressly incorporates the limitations within the statutory references to section 26863 (automation and micrographics fee), section 76238 (courthouse construction fee), section 26822.3 (Judges' Retirement Fund) and Business and Professions Code section 470.3 (dispute resolution). Although Business and Professions Code section 6322.1 limiting library fees was not expressly incorporated within subdivision (d), inferentially it was incorporated by the express reference to Business and Professions Code section 6320 that is part of the same statutory scheme governing law library fees. The methodical, not so subtle, statutory guidance here is that subdivision (d) incorporates the maximum amount of each local fee the Legislature intended to make deductible, although the specific amount of a certain fee in a particular county might vary. In doing so, the Legislature was presumptively aware of the express statutory limitations upon those fees it exempted.

The County notes, and the Controller acknowledges, the Legislature enacted subdivision (e) to ensure a predictable and steady revenue source for distribution through the trial court trust fund without unfairly upsetting local expectations regarding various fees that had been set pursuant to statutes permitting a wide range of fees. It accomplished this task by enacting subdivision (d), which permitted counties to deduct local fees authorized pursuant to referenced statutes, and subdivision (e), which removed the ability of counties to change those amounts. The Legislature also

simultaneously increased the total fee for initial filings to $182 so as to offset any revenue loss. In context, the "freeze" on local fees in subdivision (e) is not, as suggested by the County, a legislative recognition and validation of all local fees that were in place at the time Assembly Bill 1344 was enacted, regardless whether consistent with the unambiguous incorporation of the statutory limitations on such fees in subdivision (d). Rather, interpreting section 68085 and its subdivisions as a whole, subdivision (e) precludes any agency from changing the amounts allocated to any of the cited funds in subdivision (d) that were in place as of the effective date of Assembly Bill 1344 and *within the incorporated, both expressed and implied, statutory limitations on the amounts of such fees.*[11]

Our reading of the statutory scheme parallels the interpretation given it upon enactment by the Controller as evinced by the Memorandum to Interested Parties from the Division of Local Government Fiscal Affairs, Controller of the State of California, dated October 7, 1992 (the Memorandum). The Memorandum expressly lists those local fees, and their respective statutory limitations, which may be withheld from the remittance to the trial court trust fund. (*Id.* at p. 4.) It then admonishes that "no agency can take action to change the amounts currently allocated for the above purposes unless approval is first obtained from the State Controller."[12] (Memorandum, *supra*, at p. 5.) ■ Generally, courts give great weight and respect to the administrative agency's interpretation of a statute governing its powers and responsibilities. (*Jacobs, Malcolm & Burtt* v. *Voss* (1995) 33 Cal.App.4th 1399, 1404 [39 Cal.Rptr.2d 774].) Consistent administrative construction of a statute, especially when it originated with those charged with putting the statutory machinery into effect, is accorded great weight. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722], disapproved on other grounds in *Yamaha Corp. of America* v. *State Bd. of Equalization* (1998) 19 Cal.4th 1, 15 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Indeed, " '[a] court must accord great weight to an administrative agency's construction of statutes it is charged with implementing and enforcing.' " (*Jacobs, Malcolm & Burtt* v. *Voss, supra*, 33 Cal.App.4th at p. 1404, quoting *General American Transportation Corp.* v. *State Bd. of Equalization* (1987) 193 Cal.App.3d 1175, 1182 [238 Cal.Rptr. 865].)

---

[11]Presumably, the Legislature was aware of the County's unique five-year-old fee when it enacted Assembly Bill 1344. This is, indeed, noteworthy because the Legislature did not make a special provision in subdivision (d) exempting the County's fee from the $3 cap of section 26863.

[12]Presumably, the Controller's approval related only to fee increases within the incorporated statutory maximum limits. For an increase in excess of statutory limits, a county would be required to ask the Legislature to make an exception to the specific fee. This approval provision was part of subdivision (d) when Assembly Bill 1344 was enacted (Stats. 1992, ch. 696, § 20.4, pp. 3008-3009), but removed the following year in 1993 (Stats. 1993, ch. 158, § 10, p. 1194).

■ The Controller accurately characterizes the transformation in funding which occurred in 1992, from an automation fee charged to the public pursuant to a county ordinance in addition to the state-mandated initial filing fee, to one expressly made part of the state-mandated, uniform and newly increased state filing fee—the statutory funding mechanism of the trial court trust fund. In other words, after the restructuring of trial court funding effective September 15, 1992, the County was no longer charging the public for the automation fee, but rather withholding it from the amount remitted to the trial court trust fund. The clear legislative intent underlying Assembly Bill 1344 is that regardless whether local fees were imposed as part of the statutory fee or in addition thereto, they were now included in the statutory fee and covered by the statutes governing the trial court trust fund. Consequently, the Ordinance has been preempted and impliedly repealed by Assembly Bill 1344. Valid local legislation that conflicts with state law is preempted by such law and is void. (*Hogoboom* v. *Superior Court* (1996) 51 Cal.App.4th 653, 657 [59 Cal.Rptr.2d 254].) Here, if the Ordinance were given effect, it would contradict the statutory scheme for trial court funding, an area fully occupied by such law through legislative implication.

■ Mindful in determining whether local ordinances have been preempted by implication we look to the whole purpose and scope of the state legislative scheme (*id.* at p. 658); here, Assembly Bill 1344 constituted a sweeping, comprehensive, statewide legislative overhaul of trial court funding which plainly preempts a parochial county ordinance inconsistent with its statutory provisions. While there is a strong presumption against implied repeal, it may be overcome where the two legislative acts are irreconcilable, clearly repugnant and so inconsistent that the two cannot have concurrent operation. (*Stop Youth Addiction, Inc.* v. *Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *People* v. *Hazelton* (1996) 14 Cal.4th 101, 122 [58 Cal.Rptr.2d 443, 926 P.2d 423].) This is such a case.

Finally, the County argues this interpretation of subdivision (d) should not be applied to its automation and micrographics fee, because to do so would have a substantial financial impact on it, would penalize it for automating its recordkeeping system, and would be unfair and inequitable. ■ However, " '[a] legislature may repeal a statute that created non-contractual expectations as long as there is a rational basis for repeal.' " (*Mendly* v. *County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1207 [28 Cal.Rptr.2d 822].) "To the extent that this dispute involves a conflict between statewide priorities and local priorities, the statewide priorities must prevail. As the state's agents, counties must comply with statutes; relief from state mandates must come from the Legislature and not from the courts." (*Board of Supervisors* v. *McMahon* (1990) 219 Cal.App.3d 286, 300-301 [268 Cal.Rptr.

219].) Whether the County's automation fee should have been exempt from the application of section 68085 was an equitable issue for the Legislature to resolve and not one within the province of the judiciary.[13]

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 25, 1999. Kennard, J., was of the opinion that the petition should be granted.

---

[13]In light of our interpretation of the challenged statutory scheme, we do not address the merits of the trial court's alternative basis for its decision regarding the precise language of the Ordinance and its import following the enactment of Assembly Bill 1344.