[No. G033169. Fourth Dist., Div. Three. Mar. 4, 2005.]

DANIEL R. WOLSKI, Plaintiff and Appellant, v.
FREMONT INVESTMENT & LOAN et al., Defendants and Respondents.

## Counsel

Lakeshore Law Center, Jeffrey Wilens; Law Offices of Jeffrey P. Spencer, Jeffrey P. Spencer; Law Offices of Michael F. Creamer and Michael F. Creamer for Plaintiff and Appellant.

Norma P. Garcia for Consumers Union of the U.S. Inc., as Amicus Curiae on behalf of Plaintiff and Appellant.

Kevin D. Stein for California Reinvestment Coalition as Amicus Curiae on behalf of Plaintiff and Appellant.

Barbara Jones for AARP Foundation Litigation as Amicus Curiae on behalf of Plaintiff and Appellant.

Call, Jensen & Ferrell, Scott J. Ferrell, Elizabeth K. Penfil, Melinda Evans and Wayne W. Call for Defendants and Respondents.

## OPINION

**RYLAARSDAM, Acting P. J.—** ▉ In a case of first impression, we are asked to decide whether a yield spread premium (YSP) paid in connection with a residential mortgage loan is included in the definition of points and fees payable by a borrower at or before closing under the predatory lending law. (Fin. Code, § 4970 et seq.; all further statutory references are to this code unless otherwise stated). In sustaining without leave to amend the demurrer of defendants Fremont Investment & Loan, Raymond Harold Cason, Jr., and First American Funding, Inc., to plaintiff Daniel R. Wolski's first amended complaint, the court held the YSP did not fall within that definition. Plaintiff contends this was error.

In our original opinion, we held that the YSP did not fall within the definition of total points and fees payable by a borrower at the close of escrow and affirmed the judgment. Subsequently, we granted rehearing. Upon our reconsideration of the issue, we reach the same conclusion.

### FACTS

Defendant Fremont made a $185,000 residential mortgage loan to plaintiff; defendants First American and Cason acted as loan brokers. After plaintiff learned he could have obtained a loan with a lower and fixed interest rate, he filed this suit claiming violation of section 4970 et seq. and Business and Professions Code section 17200. He alleged the loan was a "covered loan" as defined by section 4970, subdivision (b)(1) because it was less than $250,000 and his total points and fees payable at closing exceeded 6 percent of the loan amount. Plaintiff alleged defendants breached various sections of the predatory lending law by failing to make certain disclosures and by including a prepayment penalty.

Defendants demurred, primarily on the grounds that the transaction did not violate the predatory lending law because it was not a covered loan. Total points and fees as alleged by plaintiff exceeded 6 percent only because he had erroneously included a $3,700 YSP in his calculations. Defendants claimed that under a proper reading of the statute, a YSP is not included in points and fees. They also argued that because there was no violation of the predatory lending law, the Business and Professions Code section 17200 cause of action failed for lack of a predicate offense. The court sustained the

demurrer without leave to amend, ruling that the YSP was not included in the definition of points and fees and thus the loan was not a covered loan under the statute.

## DISCUSSION

■ Section 4970, subdivision (b)(1)(B) provides that a loan is a covered loan and therefore subject to the terms of the statute, if "[t]he total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount." The parties agree total points and fees for the loan at issue here exceed 6 percent only if the YSP is included. Plaintiff argues it should be included; defendants contend it should not.

Foundational to our decision is an understanding of the nature of a YSP. One court has described it thus: "A Yield Spread Premium is a bonus paid to a broker when it originates a loan at an interest rate higher than the minimum interest rate approved by the lender for a particular loan. The lender then rewards the broker by paying it a percentage of the 'yield spread' (i.e., the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan. [Citation.]" (*In re Bell* (Bankr. E.D.Pa. 2004) 309 B.R. 139, 153, fn. 9; see also *Lane v. Residential Funding Corp.* (9th Cir. 2003) 323 F.3d 739, 743.) As alleged in the complaint, the lender pays the YSP to the broker at closing, and the borrower pays a higher interest rate over the life of the loan to compensate for the payment. (*O'Sullivan v. Countrywide Home Loans, Inc.* (5th Cir. 2003) 319 F.3d 732, 739; *In re Bell, supra,* 309 B.R. at p. 153; *In re Apgar* (Bankr. E.D.Pa. 2003) 291 B.R. 665, 675.)

Defendants maintain that since a YSP is not paid by the borrower, but by the lender, it does not fall within the statutory language of "[t]he total points and fees payable *by the consumer* at or before closing." (§ 4970, subd. (b)(1)(B), italics added.) But plaintiff contends he pays the YSP in the form of higher interest. Defendants counter that, even assuming the statute can be construed in such a fashion, the YSP is not "payable . . . *at or before closing.*" (§ 4970, subd. (b)(1)(B), italics added.) We agree.

■ In reviewing a statute, " '[w]e first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 485 [17 Cal.Rptr.3d 88].)

■ Here, the phrase "at or before closing" is plain and its meaning is clear. Contrary to plaintiff's suggestion, it does not include payments made after closing and over the life of the loan, such as interest. To interpret the language in that fashion would render the words "at or before closing" surplusage in violation of the rules of statutory construction. (*Bishop v. Hyundai Motor America* (1996) 44 Cal.App.4th 750, 757 [52 Cal.Rptr.2d 134].) ■ " 'We cannot presume the Legislature . . . engaged in an idle act or enacted a superfluous statutory provision. [Citation.]' [Citation.] ' "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." [Citations.]' [Citation.]" (*Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 122 Cal.App.4th 1467, 1479 [19 Cal.Rptr.3d 646].)

Plaintiff argues that even though the increased interest is paid over the life of the loan, it is "payable" at or before close. He analogizes the increased interest to a consumer paying a charge with a credit card where, even though the bank and not the consumer hands over the actual cash, the consumer is liable for reimbursing the bank for payment, plus interest. Thus, he claims, even though the YSP is not "paid" at or before closing, it is "payable" at that time.

But this is a strained and anomalous reading of the word "payable" in the context of the remaining language of the section. We may infer from the pleadings that all charges included in points and fees as disclosed by defendants were paid on or before closing. To construe the language to include one payment made over the life of the loan, when all others are paid at closing, would lead to an absurd consequence, in derogation of rules of statutory interpretation (*Sampson v. Parking Service 2000 Com. Inc.* (2004) 117 Cal.App.4th 212, 224 [11 Cal.Rptr.3d 595]) and improperly "rewrite the law to conform to an intention that has not been expressed. [Citation.]" (*Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 674 [17 Cal.Rptr.3d 427].)

Nor does other language in the statute compel a different result. Plaintiff and amici curiae argue that YSP's must be included because section 4970, subdivision (c)(2) defines points and fees to include "[a]ll compensation and fees paid to mortgage brokers in connection with the loan transaction." But this does not change the limitation of the language of subdivision (b)(1)(B) which refers to the "total points and fees *payable by the consumer at or before closing* . . . ." (§ 4970, subd. (b)(1)(B), italics added), which does not include a YSP, as discussed above.

■ In applying section 4970, our function "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what

has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858; see *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 123 [113 Cal.Rptr.2d 90].) If the Legislature had intended that all charges payable by a borrower were to be included in the calculation of points and fees payable at closing, it easily could have drafted the statute that way. We will not rewrite it to do so.

Plaintiff urges us to consider the legislative history of the statute, pointing to the evils the Legislature sought to cure, including "broker kickbacks." But a committee analysis of the bill after amendments made by the Senate reflects no discussion of broker kickbacks, although it did state one of its goals was to "[p]rohibit steering [a] consumer to a loan less favorable than warranted by [the] credit worthiness [*sic*] of [the] borrower." (Assem. Com. on Business and Finance, Analysis of Assem. Bill No. 489 (2001–2002 Reg. Sess.) as amended Sep. 6, 2001, p. 3, at <http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0451-0500/ab_489_cfa_20010913_040022_asm_floor.html> [as of Mar. 4, 2005].) However, this stated purpose fails to support plaintiff's interpretation of the statute. Moreover, nothing in the legislative history or the record shows that failing to include a YSP in the definition of points and fees payable by a consumer at closing defeats the purpose of the predatory lending law.

Further, our "authority to investigate the intent of the Legislature is subject to the precondition that the statutory language in question be ambiguous, uncertain or unclear. Otherwise, the 'plain meaning rule' prevails, and the literal text of the statute must be respected without judicial construction or interpretation. [Citations.]" (*Kramer v. Intuit, Inc.* (2004) 121 Cal.App.4th 574, 578–579 [18 Cal.Rptr.3d 412].)

In addition, plaintiff directs us to nothing in the legislative history that specifically deals with treatment of YSP's. Assembly and Senate committee reports reveal the Legislature investigated subprime lending and predatory lending practices and was aware of federal and other state statutes enacted to deal with these matters. (E.g., Assem. Com. on Appropriations, Analysis of Assem. Bill No. 489 (2001–2002 Reg. Sess.) May 16, 2001, pp. 2–3, at <http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0451-0500/ab_489_cfa_20010514_162807_asm_comm.html> [as of Mar. 4, 2005]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 489 (2001–2002 Reg. Sess.) July 3, 2001, pp. 1–2, 5, 7, at <http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0451-0500/ab_489_cfa_20010705_105027_sen_comm.html> [as of Mar. 4, 2005].) "[I]t is a settled principle of statutory construction that a Legislature in legislating with regard to an industry or an activity . . . must be regarded as having had in mind the actual conditions to which the act will apply; that is, the customs and usages of such industry or activity." (*Irvine Co. v. California Emp. Com.* (1946) 27 Cal.2d 570, 581 [165 P.2d 908].)

Thus, we may safely infer the Legislature was aware of the mechanics of YSP's and understood that they are paid by the lender with a concomitant higher interest owed by the borrower. Had it intended that a YSP be included as "points and fees payable by the consumer at or before closing" (§ 4970, subd. (b)(1)(B)), it would have included appropriate language.

Cases interpreting a federal statute with similar language are consistent with our reading of section 4970. The Home Ownership and Equity Protection Act (HOEPA) requires a lender to make specific disclosures for certain types of mortgage loans. (15 U.S.C. § 1639(a).) Similar to requirements for a covered loan under section 4970, subdivision (b)(1)(B), disclosure is required for a mortgage secured by the borrower's primary residence where "the total points and fees payable by the consumer at or before closing will exceed the greater of—[¶] (i) 8 percent of the total loan amount . . . ." (15 U.S.C. § 1602(aa)(1)(B)(i).) This section has been consistently read to exclude YSP's from the 8 percent amount.

In *In re Mourer* (Bankr. W.D.Mich. 2004) 309 B.R. 502, the court overturned a ruling by the bankruptcy court that found that, under the regulations implementing HOEPA (12 C.F.R. § 226.32(a)(1)(ii)), the YSP was a fee payable by the borrower at or before the close of the loan. It stated that such an interpretation "flies in the face of that very provision's express inclusion only of 'fees payable by the consumer at or before the loan closing.' " (*In re Mourer, supra,* at p. 505; *Mills v. Equicredit Corp.* (E.D.Mich. 2004) 344 F.Supp.2d 1071, 1076–1077; see also *In re Sigle* (Bankr. N.D.Miss. 2004) 310 B.R. 303, 306 [YSP "clearly was not paid 'at or before closing' by the (borrower)"]; *In re Collins* (Bankr. N.D.Miss. 2004) 310 B.R. 299, 301 [same]; *In re Bell, supra,* 309 B.R. at p. 153 [same].)

Plaintiff concedes the interpretation of HOEPA and its regulations, but contends the Legislature was aware of HOEPA's inadequacy and enacted section 4970 et seq. to cure the deficiencies. Thus, he concludes, we should not use HOEPA cases to interpret the statute at hand.

There is some discussion of HOEPA in a Senate committee analysis of the bill that ultimately enacted section 4970 et seq. It states that "HOEPA does not prohibit loans with high interest rates or fees or cap rates or fees. Rather, it subjects certain loans, the rates or fees for which exceed specified levels, to enhanced disclosures, restrictions on certain contract terms, and private and administrative consumer remedies for violations." (Sen. Com. on Banking, Commerce and International Trade, Analysis of Assem. Bill No. 489 (2001–2002 Reg. Sess.) Aug. 29, 2001, p. 9, at <http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0451-0500/ab_489_cfa_20020417_154147_sen_comm.html> [as of Mar. 4,

2005].) The committee analysis also refers to a 2000 United States Department of Housing and Urban Development report, entitled "Curbing Predatory Home Mortgage Lending," which contained several "recommendations to combat predatory lending, while maintaining access to credit for low- and moderate-income borrowers." (*Id.* at p. 10.) The report described four types of abuses: "loan flipping"; "excessive fees and 'packing"; ' "lending without regard to the borrower's ability to repay"; and "outright fraud and abuse." (*Ibid.*)

But none of this has anything to do with the plain meaning of section 4970 or HOEPA. Instead, given the Legislature's apparent awareness of the alleged deficiencies in HOEPA, there would be all the more reason for it to clearly specify that YSP's are to be included in the definition of points and fees payable by the borrower at closing, if it so intended.

Amici curiae argue YSP's are a "clear example" of "excessive fees and 'packing,' " which "invariably occur[] without the borrower's knowledge or understanding." Thus, they conclude, "the Legislature intended to curtail this practice by including yield spread premiums in the calculation of . . . a 'covered loan.' " But they point to nothing in the legislative history to show that the Legislature deemed YSP's to be "excessive fees and 'packing.' " To the contrary, an earlier version of the bill defined " 'packing' " as " 'the selling of additional products in a loan agreement.' " (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 489 (2001–2002 Reg. Sess.) as amended June 21, 2002, p. 3, at <http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0451-0500/ab_489_cfa_20010705_105027_sen_comm.html> [as of Mar. 4, 2005].) And while it is not theoretically illogical to characterize YSP's as excessive fees, nobody did so in any of the legislative history of the statute.

The three other main "predatory practices" defined in that previous draft of the bill included " 'flipping,' " defined as " 'the making of a subsequent loan to refinance the original loan . . . that results in no net economic benefit to the borrower' "; " 'the making of a loan without regard to the borrower's monthly income and obligations' "; and " 'the charging of fees for loan services that bear no reasonable relationship to the value of services actually performed.' " (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 489 (2001–2002 Reg. Sess.) as amended June 21, 2002, p. 3, at <http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0451-0500/ab_489_cfa_20010705_105027_sen_comm.html> [as of Mar. 4, 2005].) None of these refer to or discuss YSP's.

At the time the petition for rehearing was granted, plaintiff and amici curiae requested we take judicial notice of certain documents. We grant the request as to only one document, a letter dated August 29, 2003 from the

Chief Legal Officer of the California Department of Real Estate (DRE) to someone whose name has been redacted. We do so, even though the letter states on its face that it "should not be considered a formal interpretative opinion, since the Department does not have the authority to issue such opinions with respect to the [predatory lending law]." However it does state it is the DRE's "administrative interpretation of the provisions of the [predatory lending law] . . . ." Nonetheless, as discussed below, we do not find the substance of the letter persuasive. (See *In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 725, fn. 2 [199 Cal.Rptr. 697].)

As to the remaining documents, a fax transmittal sending the DRE letter to counsel for plaintiff, a letter from industry groups to the California Deputy Secretary for Business Regulation, a letter from a state senator to the California Corporations Commissioner, a letter from the Assistant Commissioner of the DRE to the Associate Director of the California Reinvestment Committee, and a letter from a deputy attorney general to a California assemblyman (for which there is no evidence it is a formal opinion of the Attorney General), there is no basis for our taking judicial notice. (Evid. Code, § 452; see also *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 607–608 & fn. 13 [89 Cal.Rptr.2d 370].)

■ Plaintiff and amici curiae urge us to give deference to the DRE's interpretation of the statute as set out in its letter. They rely on cases that support the general principle that "courts give great weight and respect to an administrative agency's interpretation of a statute governing its powers and responsibilities. [Citation.]" (*County of Santa Barbara v. Connell* (1999) 72 Cal.App.4th 175, 185 [85 Cal.Rptr.2d 43].) But, as plaintiff and amici curiae acknowledge, this deference is proper only if the language of the statute is ambiguous and susceptible to more than one reasonable meaning. (*Building Industry Assn. of San Diego County v. State Water Resources Control Bd.* (2004) 124 Cal.App.4th 866, 883 [22 Cal.Rptr.3d 128].) We have determined that the language is plain on its face. Further, the basis of a court's deference to administrative interpretations is based on an agency's expertise. (*Communities for a Better Environment v. State Water Resources Control Bd.* (2003) 109 Cal.App.4th 1089, 1103 [1 Cal.Rptr.3d 76].) The DRE interpretation here is based substantially if not entirely on its counsel's reading of the language of the statute, not on its expertise or experience in applying the law or issuing regulations.

Likewise, the fact that the DRE was granted the power to enforce the statute (§§ 4970, subd. (f), 4975) and acted within such authority "by convening a task force to . . . interpret the aspects of the statutory language about which industry and consumer groups had differing opinions," does not mean its interpretation has the force of law or is even correct.

■ It is the function of the judiciary, not an administrative agency, to construe statutory language. " 'Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts.' [Citations.]" (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 472 [20 Cal.Rptr.3d 428, 99 P.3d 1015].) We have done so, and our reading of the language is in direct conflict with that of the DRE. "It is the court's duty to construe statutes, 'even though this requires the overthrow of an earlier erroneous administrative construction.' [Citations.]" (*Id.* at p. 474.) An administrative agency's " 'interpretation of a regulation or statute does not control if an alternative reading is compelled by the plain language of the provision.' [Citation.]" (*Stolman v. City of Los Angeles* (2003) 114 Cal.App.4th 916, 930 [8 Cal.Rptr.3d 178].)

Amici curiae place great emphasis both on the understanding of the industry groups as to the meaning of the section when it was passed and on meetings between industry groups and state agencies after passage of the statute to clarify their interpretation of it. This reliance is misplaced for several reasons. First, it makes no difference what industry groups believed the statute meant. (See *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1161, fn. 3 [69 Cal.Rptr.2d 692] [court refuses to take judicial notice of letters to legislators by supporters and opponents of bill].) Further, a postenactment letter from a state senator who had sponsored a different predatory lending law, expressing his belief that YSP's "were always considered" to be included in points and fees, has no legal force. (Italics omitted.) (See *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 920, fn. 6 [129 Cal.Rptr.2d 811, 62 P.3d 54] [" ' "objective of an authoring legislator" ' " not considered in construing statute where no indication Legislature knew of objective or passed bill to effect it]; see also *Carman v. Alvord* (1982) 31 Cal.3d 318, 331, fn. 10 [182 Cal.Rptr. 506, 644 P.2d 192] [drafter's "after-the-fact" explanation of intent does not govern determination of how voters understood proposition]; *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 399, fn. 9 [20 Cal.Rptr.2d 164] [letter from legislative counsel sent two years after passage of statute inadmissible to show legislative intent because no evidence it reflected understanding of those who enacted statute].)

We are mindful that YSP's are considered by some to be a predatory lending practice, and we can understand why consumer groups would want them regulated. However, section 4970 did not effect that regulation. The remedy to make that change is with the Legislature.

Plaintiff acknowledged in the trial court he could not amend this cause of action, and we agree with that conclusion. Because the cause of action for violation of Business and Professions Code section 17200 was predicated on the violation of the predatory lending law, it, too, must fail.

## DISPOSITION

The judgment is affirmed. The motions to file amicus curiae briefs are granted. The request for judicial notice is granted as to the August 29, 2003 letter from the Chief Legal Officer of the California Department of Real Estate only, and denied as to the remaining documents. Respondents are entitled to their costs on appeal.

Aronson, J., and Ikola, J., concurred.