Filed 5/14/15  Mabee v. County of Riverside CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROBERT MABEE et al., | |
| Plaintiffs and Appellants, | E059496 |
| v. | (Super.Ct.No. RIC1214529) |
| COUNTY OF RIVERSIDE, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Judge.  Affirmed.

Robert D. Mabee, in pro. per., for Plaintiff and Appellant Robert D. Mabee.

Martha A. Mabee, in pro. per., for Plaintiff and Appellant Martha A. Mabee.

Disenhouse & Ivicevic, Bruce E. Disenhouse and Janine L. Highiet-Ivicevic for Defendant and Respondent.

1

## I. INTRODUCTION

Plaintiffs and appellants Robert D. and Martha A. Mabee (plaintiffs), in propria persona, appeal from the judgment dismissing their first amended complaint against defendant and respondent County of Riverside (the County) for breach of contract, fraud, and other torts—based on the County's failure to record a 1995 deed granting plaintiffs a nonexclusive easement over public property to access plaintiffs' property. The judgment was entered after the trial court sustained the County's demurrer to the complaint without leave to amend. We agree the complaint does not and cannot state a cause of action against the County. Accordingly, we affirm.

## II. STANDARD OF REVIEW

A general demurrer tests the legal sufficiency of the allegations of a complaint by claiming the allegations, even if true, do not state a cause of action. (*McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 77.) On appeal from a judgment of dismissal following an order sustaining a general demurrer, our review is guided by long-settled principles. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We read the complaint as a whole and its parts in their context. (*Ibid.*; *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) We assume the truth of all properly pled factual allegations and consider matters judicially noticed, but we do not assume the truth of contentions, deductions, or legal conclusions. (*Blank v. Kirwan, supra,* at p. 318.) Our review is de novo: we independently determine whether the complaint states any cause of action. (*McKenney v. Purepac Pharmaceutical Co., supra,* at p. 78.)

2

And when, as here, a general demurrer has been sustained without leave to amend, we determine whether there is a reasonable possibility the defect or defects can be cured by amendment. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) If so, the trial court has abused its discretion in sustaining the demurrer, and we reverse; if not, there has been no abuse of discretion and we affirm the judgment of dismissal. (*Ibid.*) The burden of showing a reasonable possibility that the defects in the complaint can be cured by amendment rests "squarely on the plaintiff." (*Ibid.*)

### III. BACKGROUND

A. *Overview*

An intelligible summary of the relevant background underlying plaintiffs' present claims against the County is very difficult to discern based solely on the allegations of the first amended complaint. In an ostensible attempt to support their present allegations, plaintiffs attached many documents to their original complaint and to their opposition to the County's demurrer to their first amended complaint. Because plaintiffs ostensibly intended to allege the facts described in these documents, we consider the contents of the documents in our effort to draw a more complete picture of the facts underlying plaintiffs' allegations.

The present action is the fourth action plaintiffs have filed against the County since 1990 concerning the easement rights to plaintiffs' property. On our own motion, we have taken judicial notice of the decisions issued by this court in the three prior actions: (1) *Mabee v. County of Riverside* (Feb. 8, 2000, E024041) [nonpub. opn.]

3

(Riverside County Superior Court case No. 291475) (*Mabee III*); (2) *Mabee v. County of Riverside* (Feb. 13, 1998, E019887) [nonpub. opn.] (Riverside County Superior Court case No. 254996) (*Mabee II*); and (3) *Mabee v. County of Riverside* (June 2, 1992, E009108) [nonpub. opn.] (Riverside County Superior Court case No. 187104) (*Mabee I*). (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  These decisions shed much-needed light on plaintiffs' current allegations against the County.

B.  *Plaintiff's Original Easement Rights and Prior Lawsuits Against the County*

In 1964, plaintiffs purchased a home on a 10-acre parcel, along with two 5-acre parcels and one 8-acre parcel, for a total of 28 contiguous acres (the property).  The property was located around half a mile from the Bautista Creek Channel, a flood control channel maintained by the County Flood Control and Water Conservation District (the District).  In 1965, the District granted plaintiffs and other property owners nonexclusive easement rights over a 15-foot-wide maintenance road running next to the channel, in order to allow access to the owners' otherwise "land-locked" properties.[1]

Plaintiffs allege they had "no problem[s]" with their existing easement rights until 1985, when the District fenced the 15-foot-wide road to address "mounting incidences" of vandalism and trespass in the channel.  In 1986, the District began constructing a 40-foot-wide "dirt road," running adjacent to the 15-foot-wide road and farther from the

---

[1]  When plaintiffs purchased the property, it was already benefited by easement rights held by the prior owner of the property.

4

channel, "to provide access for the various property owners along the channel." (*Mabee I*, pp. 2-3.) By 1988, the District completed the 40-foot-wide dirt road. (*Mabee I*, p. 3.)

Plaintiffs were still able to access their property using the 15-foot-wide road while the 40-foot-wide road was being built, because the District did not lock the fence to the 15-foot-wide road until the 40-foot-wide road was completed in 1988. (*Mabee I*, p. 3.) After the 40-foot-wide road was completed in 1988, the District "fully fenced off the old easement [the 15-foot-wide road] with a locked gate and barbed wire," completely blocking access to plaintiffs' property over the 15-foot-wide road. (*Ibid.*)

Apparently before the 40-foot-wide road was completed in 1988, plaintiffs' access to the 15-foot-wide road was to some extent blocked by a "pile up of dirt" resulting from the District's modification of a "side channel" where the 15-foot-wide road met "the southern terminus" of plaintiffs' property. (*Mabee II*, p. 2.) This obstruction required plaintiffs to take a northeasterly route over District-owned land in order to access the 40-foot-wide road. (*Ibid.*) Though the 40-foot-wide road abutted plaintiffs' property, the 40-foot-wide road was apparently inaccessible directly from plaintiff's property, requiring plaintiffs to take the northeasterly route over District-owned land in order to reach the 40-foot-wide road from their property.

Plaintiffs filed their first lawsuit against the County in 1990, alleging an unlawful taking or inverse condemnation of their property based on their blocked access to the 15-foot-wide road. (*Mabee I*, pp. 2, 12.) The trial court in the first lawsuit found there was no taking or inverse condemnation, and this court affirmed the judgment in favor of the

5

County in our 1992 decision in *Mabee I*. We agreed with the trial court that there was no taking because the 1965 deed granting plaintiffs nonexclusive easement rights over the 15-foot-wide road provided the easement would "cease and determine" in the event "a public highway or street" was extended to "Section 22," which included plaintiffs' property. (*Mabee I*, p. 4.) Thus, plaintiffs' easement over the 15-foot-wide road ceased when, on May 11, 1988, the District granted the County an easement for public road purposes over the 40-foot-wide road. (*Ibid*.)[2]

In September 1994, plaintiffs filed their second lawsuit against the County, again alleging inverse condemnation but this time seeking damages for the diminution in value of their property, from and after 1989, resulting from construction of the 40-foot-wide road and the blocking of the 15-foot-wide road. (*Mabee II*, p. 1.) In a 1996, bifurcated court trial on the County's statute of limitations defense, the trial court (Judge (now retired Justice) Gaut) found that plaintiffs' second lawsuit was barred by the three-year limitations period of Code of Civil Procedure section 338, subdivision (j), which applies to inverse condemnation actions based on damage to property. (*Mabee II*, pp. 1-2, 7-9; see also Code Civ. Proc., § 338, subd. (b) [three-year limitations period applies to action for obstruction of right-of-way or easement over adjoining property].)

The trial court reasoned that, no later than 1989, plaintiffs knew or should have known that their access to the 15-foot-wide road was blocked; hence, their second

---

[2] Other than our 1992 decision in *Mabee I*, the record on appeal includes no court records from plaintiffs' 1990 lawsuit.

6

lawsuit, filed more than three years later in 1994, was time-barred.  The court also found

that plaintiffs had "unhindered access" from their property to the 40-foot-wide road over

a "twelve foot ramp" the District built, apparently over a wash, in order to allow plaintiffs

and other property owners to access the 40-foot-wide road over District-owned land.

Because plaintiffs had unhindered access over the 40-foot-wide road and also because

their second lawsuit was time-barred, the trial court declined to determine whether, as the

District was claiming, "unhindered access [over the 40-foot-wide road was] the same as

legal access."  (*Mabee II*, pp. 9-10.)  Plaintiffs were apparently dissatisfied with the

northeasterly route to their property over District-owned land, and were claiming they

were entitled to continued easement rights over the 15-foot-wide road.  In our 1998

decision in *Mabee II*, we affirmed the judgment in favor of the County on the ground the

second lawsuit was time-barred.[3]

Meanwhile, in September 1995, the County offered plaintiffs $5,000, plus "a new

easement to their property," apparently, the northeasterly route over District-owned land,

to settle plaintiffs' claims in their second lawsuit.  At an October 3, 1995, public meeting

of the County Board of Supervisors (the Board), the District presented to the Board a

proposed easement deed as agenda item 10-3, and the Board approved the easement deed

(the 1995 easement deed) as District Resolution No. F95-50.  By the same resolution, the

Board granted similar, nonexclusive easement rights to the owners of three other

---

[3]  Other than our 1998 decision in *Mabee II*, the record on appeal includes no
court records from plaintiffs' second lawsuit, filed in 1994.

7

properties near plaintiffs' property and the Bautista Creek Channel. Plaintiffs rejected the County's settlement offer and the 1995 easement deed was never delivered to plaintiffs; nor was it ever recorded. Instead, plaintiffs took their second lawsuit to trial and lost, because the trial court found their claims were barred by the three-year limitations period. (Code Civ. Proc., § 338, subds. (d), (j).) Meanwhile, in 1996, plaintiffs lost their property to foreclosure.

In our 2000 decision in *Mabee III*, we affirmed the judgment dismissing plaintiffs' first amended complaint against the County, filed in 1997, in which plaintiffs sought to *enforce* the judgment in their first lawsuit *against the County*. (*Mabee III*, at pp. 2-4.) We said: "The theory seems to be that the first judgment ruled that the plaintiffs had a right to access their property over the new public road that was opened on May 11, 1988, and that the county had subsequently encroached on the new road by changes which had the effect of denying plaintiffs' access to their property. . . ." (*Mabee III*, at p. 3.) Plaintiffs sought damages equal to the difference in the value of their property "with access and without access, plus interest from January 17, 1989." (*Mabee III*, p. 4.)

In *Mabee III*, we observed plaintiffs were "attempting to relitigate the unfavorable results of the two previous superior court actions," and rejected plaintiffs' attempt to circumvent those results and state a new claim against the County, based on the County's alleged interference with plaintiffs' easement rights. (*Mabee III*, p. 4.) We held the judgment in the first lawsuit did not give plaintiffs a right of access over the 40-foot-wide public road; instead, it concluded plaintiffs' easement over the 15-foot-wide road was

8

extinguished when the 40-foot-wide public road was built, and though plaintiffs had a right to access their property over the public road, that right was created by operation of law, not by the judgment in the first lawsuit. (*Mabee III*, at pp. 5-6.)

We also pointed out that plaintiffs were attempting to avoid the three-year statute of limitations bar on their easement-interference claims by "styling their action" as an action on a judgment, and bringing the action within 10 years of the date the judgment in the first lawsuit was final. (Code Civil Proc., § 337.5; *Mabee III*, pp. 5-6.) We rejected plaintiffs' attempt to circumvent the judgments in their first and second lawsuits, reasoning plaintiffs could not state a cause of action based on a judgment finding plaintiffs had no enforceable easement rights. (*Mabee III*, p. 5.)

C. *Plaintiffs' First Amended Complaint in the Present Action*

In September 2012, plaintiffs filed their original complaint in the present action, alleging a single cause of action for fraudulent conversion based on the County's failure to record the 1995 easement deed. The County demurred on several grounds, and the trial court sustained the demurrer on the grounds the complaint was unintelligible and failed to state a cause of action. (Code Civ. Proc., § 430.10, subds. (e), (f).) Plaintiffs were granted 30 days leave to amend.

Plaintiffs then filed their first amended complaint alleging causes of action for breach of contract, fraud, conversion, "violation of Penal Code [section] 496" (receiving stolen property), breach of fiduciary duty, negligence, negligent misrepresentation, and civil conspiracy. (Capitalization omitted.) All of plaintiffs' present claims are based on

9

the County's failure to record the 1995 easement deed. The present action represents plaintiffs' fourth attempt to state a cause of action against the County based on its alleged interference with plaintiffs' easement rights, back in 1988. For the reasons we explain, the present action is also time-barred.

Plaintiffs allege that, in 2011, Supervisor Marion Ashley, "[t]hrough the goodness of his heart," conducted an independent investigation of plaintiffs' easement-related claims against the County. In April 2011, Supervisor Ashley filed a report with the Board in which he determined that outside counsel for the County "falsely represented" to the trial court, this court, or both, that while plaintiffs' second lawsuit was pending, the new 40-foot-wide road the County completed in 1988 provided plaintiffs "unobstructed access" to their property. Supervisor Ashley recommended the County pay plaintiffs $242,628 in compensation, noting: "It is a matter of record that no easement was ever recorded nor was any written settlement ever offered for loss of access." The $242,628 was the amount plaintiffs asked the County to pay them in 2011. The Board did not approve the $242,628 settlement proposal because Supervisors Stone and Buster objected to it, and it required the votes of four out of five supervisors to pass. The state Attorney General declined a request by Supervisor Jeffries to conduct an independent investigation of plaintiffs' claims on the ground the matter involved no issues of statewide interest.

Plaintiffs further allege that, following Supervisor Ashley's report and settlement proposal, plaintiff Robert Mabee reviewed the County's file for the "Bautista Canyon access road for the last 24 years," and discovered item 10.3 of the October 3, 1995, Board

10

meeting and Resolution No. F-95-50, approving the 1995 easement deed. The stated purpose of the resolution was "[t]o give property owners easements of ingress and egress over district owned land," because the County had "land-locked the property owners and these easements will provide new access . . . ."

In March 2012, plaintiffs asked the clerk of the Board to provide them with a copy of the recorded 1995 easement deed; the clerk advised that the 1995 easement deed had never been recorded; and the County refused plaintiffs' request to record the 1995 easement deed. In June 2012, Supervisor Tavaglione announced in a public meeting of the Board that the 1995 easement deed was never recorded because "the escrow was not closed." County counsel later confirmed "there was no escrow."[4]

Plaintiffs claim that, under the "[d]elayed [d]iscovery [r]ule," the limitations period on their present claims against the County did not accrue until March 1, 2012, the date they finally discovered the 1995 easement deed existed but had never been recorded. Plaintiffs also assert that the County had a fiduciary duty to record the 1995 easement deed and ensure that plaintiffs could access their property; the County breached these duties; and the County entered into a contract with plaintiffs "by recording a DEED on August 1, 1965," apparently referring to the District's deed granting plaintiffs easement rights over the 15-foot-wide road.

---

[4] Plaintiffs allege that an audio recording of the October 3, 1995, meeting of the Board reveals there was no discussion of agenda item 10.3, even though the Board approved the 1995 easement deed at that meeting. We attach no significance to the fact agenda item 10.3 was not discussed; apparently, the agenda item was unopposed.

11

In wholly conclusive terms, plaintiffs assert the County intended to defraud them by not recording the 1995 easement deed, and, through its outside counsel, Bruce Disenhouse, falsely represented to the trial court and this court during plaintiff's second lawsuit that the new, 40-foot-wide public road afforded plaintiffs "unobstructed access" to their property. Plaintiffs claim they lost their appeal in their second lawsuit due to this false representation; they were unable to sell their property due to the County's interference with their easement rights; and they lost their property to foreclosure in 1996 due to the financial burden they suffered in "fighting to reinstate the easement." Plaintiffs seek $242,628 in damages for their lost property, plus additional tort damages, plus treble damages for the County's alleged fraud.

The trial court sustained the County's demurrer to the first amended complaint on the grounds (1) it did not state a cause of action (Code Civ. Proc., § 430.10, subd. (e)); (2) plaintiffs did not have standing to sue; and (3) plaintiffs failed to comply with the Government Claims Act (Gov. Code, § 810 et seq.). Plaintiffs were denied leave to amend, after the trial court found there was no reasonable possibility plaintiffs could cure the defects in their first amended complaint by amendment. This appeal followed.

## IV. DISCUSSION

A. *Plaintiffs' First Amended Complaint Does Not and Cannot State a Cause of Action*

The gravamen of plaintiffs' first amended complaint is that the County, by failing to record the 1995 easement deed, caused plaintiffs to incur $242,628 in money damages through the loss of their property to foreclosure in 1996, plus additional tort damages and

12

treble damages for the County's fraud in failing to record the 1995 easement deed. In conclusive terms, plaintiffs allege the County conspired against them and defrauded them out of their easement rights by failing to record the 1995 easement deed.

On this appeal, plaintiffs claim the County is estopped from claiming plaintiffs failed to timely pursue their claims against the County based on the 1995 easement deed because the County intentionally concealed the deed and defrauded plaintiffs out of their easement rights and property by failing to record the deed in 1995. Plaintiffs also argue their claims based on the 1995 easement deed are timely, having been preserved by the "delayed discovery rule," because they acted diligently but, because of the County's fraud, reasonably failed to discover the 1995 easement deed, and the County's failure to record it, until March 1, 2012.

For its part, the County argues plaintiffs cannot state a cause of action because they lack standing to sue based on the 1995 easement deed, having lost their property to foreclosure in 1996. The County also argues plaintiffs' claims are barred because they did not seek permission from the County to present a late claim under the Government Claims Act, and thus failed to comply with the claims presentation requirements of the Act. (Gov. Code, §§ 911.4, 911.2, 946.6.)

The parties' arguments do not address a more fundamental, dispositive question: whether plaintiffs can state any cause of action *for money damages* based on the County's failure to record the 1995 easement deed. We conclude plaintiffs cannot state any claim for money damages based on the County's failure to record the 1995 easement deed—

13

even assuming, as plaintiffs claim, that the limitations period on their present claims is tolled because plaintiffs reasonably failed to discover the 1995 easement deed until 2012, and further assuming plaintiffs have standing to sue the County for money damages for the 1996 loss of their property to foreclosure, based on the County's long-ago interference with the easement rights to plaintiffs' former property.

*Any claims* plaintiffs had against the County for damages based on the County's interference with the easement rights to plaintiffs' property were time barred, in 1994, when plaintiffs filed their second lawsuit against the County seeking money damages based on the County's wrongful interference with plaintiffs' easement rights.  Res judicata prohibits the relitigation of claims that were litigated, or that could have been litigated, in a prior action.  (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 514.) In their second lawsuit, which was time-barred when it was filed in 1994, plaintiffs could have claimed, but did not claim, that the County had a duty to grant their property easement rights over District-owned land, to access the 40-foot-wide road.  These are the same easement rights plaintiffs now claim the County owed them, but failed to grant them, by conveying and recording the 1995 easement deed in 1995.

In fact, in their second lawsuit plaintiffs took the opposite position they take now. They claimed the County wrongfully interfered with their easement rights over the 15-foot-wide road, and sought to retain *those* easement rights.  They were dissatisfied with the new, northeasterly easement route the District was willing to grant them over District-owned land—the same easement route the Board approved by approving the 1995

14

easement deed.  They rejected the County's 1995 settlement offer, which included an offer to convey and record the *1995 easement deed which plaintiffs now claim the County caused them damages for failing to record.*  Because plaintiffs could have but did not raise the claim they now raise in their *first* lawsuit against the County for inverse condemnation, they cannot litigate that claim now.[5]

Plaintiffs also claim that during their second lawsuit, the County's outside counsel, Bruce Disenhouse, falsely represented that the new, northeasterly route over District-owned land afforded plaintiffs "unobstructed" access to their property.  But even if the northeasterly route was obstructed—contrary to the trial court's finding in the second lawsuit—this could not have affected the trial court's determination that plaintiffs' "claim of interference with [their right of ] legal access" and suit for money damages, was time-barred.  Indeed, whether the northeasterly route was obstructed had nothing to do with whether plaintiffs' easement claims were time-barred when their second lawsuit was filed.

Because the fundamental defect in plaintiffs' first amended complaint cannot be cured by amendment, the County's general demurrer to the complaint was properly sustained without leave to amend.

---

[5]  Plaintiffs do not seek to state a claim for declaratory relief, namely, a judicial declaration that their formerly owned property is benefited by the 1995 easement deed. And even if they did, they have no standing to seek such relief because they no longer own the property.  (*Martin v. Bridgeport Communty Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031-1032 [plaintiffs who did not own subject property lacked standing to sue for violations of owners' property rights]; Code Civ. Proc., § 367 [action must be prosecuted in name of real party interest, except as otherwise provided by statute].)

B. *Plaintiffs' Requests for Judicial Notice Are Unavailing*

Plaintiffs have asked this court to take judicial notice of three letters written by three County officials during the pendency of this appeal. Even if we were to take judicial notice of the letters as official acts of the County regarding plaintiffs' claims (Evid. Code, §§ 452, subd. (c), 459, subd. (a); see *Wolski v. Fremont Investment & Loan* (2005) 127 Cal.App.4th 347, 355-356), neither the existence of the letters nor their contents can assist plaintiffs in stating a legally sufficient claim against the County based on its failure to record the 1995 easement deed.

One letter is dated August 15, 2014, and addressed to plaintiff Robert Mabee from Kimberly A. Rector, Assistant Clerk of the Board. The letter states that the clerk of the Board "reviewed item 10.3 of [the] October 3, 1995," meeting, and "determined that a notice of publication or certificate of notice to property owner was not included with the supporting documents." The letter thus states the clerk "cannot confirm whether the Riverside County Flood Control and Water Conservation District . . . caused a notice to be published and/or mailed notice to the property owners."

Plaintiffs proffer this letter to support their claim that they were not given notice of the October 3, 1995, meeting. But even if, as plaintiffs allege, they were not given notice of the meeting, and even if, as plaintiffs claim, they reasonably failed to discover the 1995 easement deed until 2012, plaintiffs cannot state a legally sufficient claim against the County based on the County's failure to record the 1995 easement deed. As discussed, because plaintiffs' easement-interference claims against the County were time-

16

barred when the 1995 easement deed was approved in October 1995, plaintiffs were not entitled to the 1995 easement deed when it was approved.  Thus, plaintiffs cannot state any claim based on the County's failure to record the 1995 easement deed.

The second and third letters are an April 21, 2014, letter to this court from County Supervisor Kevin Jeffries,[6] and a December 3, 2013, letter to the State Bar of California from County Supervisor Marion Ashley.[7]  Both letters are sympathetic to and supportive

---

[6] The letter from Supervisor Jeffries states:  "Since 1988, Robert Mabee has been fighting for compensation for the loss of access to his property that was either taken away or obstructed by actions of the Riverside County Flood Control and Water Conservation District.  Handicapped by his apparent inability to afford professional legal counsel, he has been badly outmaneuvered by attorneys hired by the county to prevent him from being compensated—almost certainly running up legal costs that long ago exceeded the loss in property value suffered by Mr. Mabee.  [¶]  During the 20+ years of political and legal battles by the county to prevent a settlement, the county appears to have offered a series of often contradictory defenses of its actions in court and in public, as documented by Mr. Mabee.  These include, at various times:  [¶]  1)  Arguing first that the 40 foot access road that blocked his easement was a public road that ended the legal claim for an easement, and then subsequently claiming that it was never a public road and therefore did not require permits to obstruct.  [¶]  2) Suggesting first that Mr. Mabee had been granted a replacement easement that was recorded and available, and then later clarifying that they had granted an easement, but never recorded the deed, because he had never 'accepted' the easement, though no such condition had originally been placed on their offer.  [¶]  3) Stipulating initially that he had never lost access to his property, and then in subsequent appeals on other issues, claiming that there had been no dispute about the fact that access to his property had been blocked.  [¶]  The long legal record of this case and the behavior by various county agencies over two and a half decades is an affront to the Constitutional principle that citizens should be compensated for government actions that deprive them of the use of their property, and I would encourage the Court to look at the entirety of this case."

[7] The letter from Supervisor Ashley states:  "I am writing on behalf of Mr. Robert Mabee . . . to support his contention that the Easement Deed in question, approved by the Board of Supervisors in Resolution No. F-95-50 on October 3, 1995, should have been recorded, as was done for the other three property owners.  [¶]  The taking of easements . . . for construction of the Bautista Channel, I believe, required that the Easement Deed

*[footnote continued on next page]*

17

of plaintiffs' current claims, and both express the view that the County should compensate plaintiffs for the 1996 loss of their property. Neither letter alleges any facts not considered in this opinion. Thus, neither letter assists plaintiffs in stating a legally sufficient claim against the County.

## V. DISPOSITION

The judgment dismissing plaintiffs' first amended complaint against the County is affirmed. The parties shall bear their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

RAMIREZ _____
P. J.

McKINSTER _____
J.

---

*[footnote continued from previous page]*
providing ingress and egress to his property be recorded. The lack of a settlement and recordation provides proof that, while the easement was utilized for the Bautista Channel, Mr. Mabee was never compensated for that easement. In addition, the lack of recordation deprived Mr. Mabee of his property rights to subdivide and develop the property as there was no Easement Deed on record guaranteeing ingress and egress for any subdivision of his property."